**NATIONAL RIFLE ASSOCIATION,**
**Plaintiff,**

v.

**The HANDGUN CONTROL**
**FEDERATION, et al.,**
**Defendants.**

**No. 1:90CV0791.**

United States District Court,
N.D. Ohio, E.D.

Sept. 2, 1992.

Simor L. Moskowitz; and John F. King, Hofelich & King, Cleveland, OH, for plaintiff.

Tom C. Buford and Raymond Scott Ling, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, OH, for defendants.

### MEMORANDUM AND ORDER

WHITE, District Judge.

This action arises out of the Copyright Act of 1976, 17 U.S.C. § 101, et seq. The plaintiff, National Rifle Association of America (NRA), is engaged in lobbying activities to support the right of law-abiding citizens to keep and bear firearms while the defendant, Handgun Control Federation of Ohio (HCF), engages in lobbying activities to enact laws to restrict possession, ownership and transfer of firearms. In furtherance of its purpose, the NRA disseminates information to its members in the form of magazines, newsletters, pamphlets, media advertisements and other types of publications. In February,

1988 the plaintiff compiled, organized and arranged information concerning Ohio legislators which was included in a May 5, 1989 five-page newsletter, three pages of which consisted of information concerning members of the Ohio General Assembly, listing each member by name, district, home town and telephone number. Another newsletter was published on June 7, 1989 which contained a refinement of the list of members of the Ohio General Assembly. On July 27, 1989 the NRA applied for an received copyright registration of the newsletters. Plaintiff alleges that the defendants copied the plaintiff's compilation of information concerning ·the members of the Ohio General Assembly and published it in a newsletter entitled "Lobbying Alert" in violation and infringement of the plaintiff's exclusive copyright rights in their newsletters, and in particular, the lists of the members of the Ohio General Assembly. The parties have filed cross motions for summary judgment.

■ It is a fundamental rule of law that ideas and facts cannot be copyrighted. *Feist Publications v. Rural Telephone Service Co. Inc,* 499 U.S. 340, 111 S.Ct. 1282, 1287, 113 L.Ed.2d 358 (1991). But compilations of facts may be protected. 17 U.S.C. § 103. To copyright a compilation the following three criteria must be satisfied: (1) collection and assembly of pre-existing material, facts or data; (2) selection, coordination or arrangement of those materials; and (3) the creation, by virtue of the particular selection, coordination, or arrangement, of an original work of authorship. *Feist Publications v. Rural Telephone Service Co. Inc,* 499 U.S. at 355, 111 S.Ct. at 1293. Originality is most important in determining whether fact based works deserve copyright protection. *Id.* 499 U.S. at 346, 111 S.Ct. at 1288. The Court must focus on the manner in which the collected facts have been selected, coordinated and arranged to decide whether originality exists. *Id.* 499 U.S. at 359, 111 S.Ct. at 1294. The Court stated:

> [T]he originality requirement is not particularly stringent. A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author

make the selection or arrangement independently (i.e., without copying that selection or arrangement from another work), and that it display some minimal level of creativity. Presumably, the vast majority of compilations will pass this test, but not all will. There remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually non-existent.

*Id.* 499 U.S. at 358–59, 111 S.Ct. at 1294. Also the author of the compilation cannot keep others from using the facts that he has gathered. The facts may be freely copied. Copyright protects only the aspects that owe their origins to the compiler, i.e., the selection, coordination and arrangement of the facts. *Id.* 499 U.S. at 359, 111 S.Ct. at 1295. The facts do not have to be presented in an innovative or surprising way but the selection and arrangement cannot be so mechanical or routine as to require no creativity at all. *Id.* 499 U.S. at 361, 111 S.Ct. at 1296.

■ In his declaration attached to the NRA's cross motion for summary judgment, Charles H. Cunningham, states that he put together a newsletter to NRA members concerning pending Ohio gun control legislation. Information concerning Ohio state legislators was accumulated using "numerous sources." Specific items and information from these sources were compiled in a format which he devised. He took information included in several existing lists and re-arranged them in ascending numerical order in accordance with their district designations. He also cross-indexed several lists, selecting various information and coordinated and arranged it in an original manner by juxtaposing horizontally, next to each legislator's name, his or her district number, home city, Columbus phone number and local district phone number. In addition to the list he composed a paragraph of text urging recipients of the newsletter to contact the offices of the representatives, marked with an asterisk and listed in boldface type.

The Court finds that plaintiff's selection and arrangement of the Ohio Representatives to be mechanical and routine. Exhibits before the Court show similar methods of preparing such a list. These exhibits contain

a list of committees with names of its members underneath. Plaintiff merely took all the names, placed them in order by district number and put an asterisk by the names of those on the Judicial and Criminal Justice Committees. Defendant Axelrod testified that it is common for lists to indicate the committee handling certain legislation and to specify the members of the committee. Furthermore, there are only a few ways to communicate this type of information in a manner most effective to lobbying organizations. Plaintiff's instructions to contact the persons whose names are marked with an asterisk shows no originality. That type of instruction is contained in most lobbying newsletters urging action by the members of the organization.

■ Even if plaintiff's material was copyrightable the defense of fair use would bar any recovery of damages. The fair use defense, found in 17 U.S.C. § 107, states:

Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phono records or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright.

The statute further provides criteria for deciding whether the use doctrine applies.

"In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work."

Plaintiff contends that the first criteria is satisfied in its favor because HCF's use of the list was commercial in that it constituted an unfair exploitation of an original work of authorship and the proprietary rights and privileges that belong to the copyright owner and HCF's competitor, the NRA. The facts in this case show that the list was not used for a commercial motive. HCF is a nonprofit corporation and use of the list did not result in remuneration. NRA's argument that a commercial use was involved because use of the list exploited the NRA's proprietary rights and privileges is without merit. The fair use doctrine allows use without consent because consent would unlikely be given to a class of material that should be more freely disseminated. Proprietary rights and privileges would block fair use of any material.

In *MCA v. Wilson,* 677 F.2d 180, 182 (2nd Cir.1981), the court stated that, as to the nature of the copyrighted work, the court can consider whether it "represented a substantial investment of time and labor made in anticipation of a financial return" as well as whether the work was creative, imaginative and original. There is no indication that the NRA compiled the list for the purposes of a financial return.

The effect of the use upon the potential market for or value of the copyrighted work is another factor to consider. 17 U.S.C. § 107(4). The United States Supreme Court held in *Sony Corp. v. Universal City Studios,* 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984),

[A]lthough every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright, noncommercial uses are a different matter. A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work.... What is necessary is a showing by a preponderance of the evidence that some meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated.

There is no doubt that the list was not used for commercial purposes. Therefore the NRA must demonstrate that the use was harmful or that if it became widespread, it would adversely affect the potential market for the copyrighted work. There are no facts proving that HCF's use of the list was harmful. HCF sent the list to less than 200 people. Because of the nature of the list, there is little likelihood that the potential market for the copyrighted work would be effected. HCF received no financial gain from the one time marketing of its newsletter. Also there is no market for this type of list. It is public information published by the state legislature and various groups.

Accordingly, plaintiff's motion for summary judgment is **denied.** Defendant's motion for summary judgment is **granted.**

IT IS SO ORDERED.